UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **QUINDELE ADDISON**<br>     **LA. DOC #367461**<br>**VS.** | **CIVIL ACTION NO. 5:12-cv-2620**<br><br>**SECTION P**<br><br>**JUDGE S. MAURICE HICKS** |
| **STEVE HARDEN, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Quindele Addison filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on October 2, 2012. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections. He is incarcerated at the David Wade Corrections Center (DWCC) and he complains that he was denied appropriate treatment for mental health problems which resulted in his involvement in a physical altercation with his cell mate. He also complains that he was not properly treated for injuries he sustained in the altercation. Plaintiff sued various corrections personnel seeking money damages and injunctive relief. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Background*

Plaintiff is an LDOC inmate who is confined at the DWCC. On October 14, 2011 he was confined in a cell with cell mate Amos Jackson. On that date, plaintiff " ... was under a great deal of mental stress and emotional discomfort and was seriously contemplating suicide and other forms of self-harm." At 2:00 p.m. on October 14, plaintiff submitted a "sick call" request

to Sgt. Kidd; in the sick call plaintiff complained that he felt suicidal and, "... I feel like I wanna hurt myself or someone [else]." Within 5 minutes Capt. Scriber came to talk to plaintiff and plaintiff reiterated his fears to him. Scriber immediately left and returned with Sgt. Kidd. Together, they restrained both plaintiff and his cell mate in handcuffs and shackles. Once the two inmates were restrained, Scriber removed all of plaintiff's personal property, mattress, bed linen, and clothing. He and his cell mate were returned to their cell and plaintiff was provided a "paper gown." According to plaintiff this "degrading and humiliating experience only aggravated and further exacerbated [his] mentally depressive and emotionally stressful state.

Ten minutes later, Steve Harden, the prison social worker interviewed plaintiff and placed him on "Standard Suicide Watch." Nevertheless, plaintiff remained in the same cell with his cell mate.

At 8:05 p.m. plaintiff and his cell mate were involved in a physical altercation. Plaintiff claims that he has no recollection of how the altercation began. Plaintiff sustained swollen eyes, bleeding, and a large knot in the center of his forehead.  Plaintiff was examined by Capt. Lee and then Nurse Jackie Tucker who documented plaintiff's complains and injuries.

During the days and weeks following the October 14th incident, plaintiff complained about pain and pressure on his eyes, blurred vision, and distorted perception whenever he tried to read or was otherwise exposed to bright lights.  On October 18 and 31, and again on November 8, 2011, plaintiff was examined by E.M.T. Joel Williams.  He was also examined and questioned by E.M.T. John Martin; however, plaintiff contends that neither Williams nor Martin provided treatment.  Plaintiff then complained to Medical Director Paula Millwee who advised him to continue to make sick calls. As the result of a grievance he filed on January 9, 2012, plaintiff was examined by a physician on January 20, 2012.  Thereafter, on February 1, 2012, he was

examined by an eye doctor who prescribed corrective lenses for plaintiff. Plaintiff is still awaiting an "outside referral."

Plaintiff complains that the defendants showed deliberate indifference to his personal health and safety when they refused to separate him from his cell mate thus failing to protect plaintiff from himself and others. He also complains that the delay in receiving medical care and the refusal to send him to be examined by an "outside ophthalmologist" have also demonstrated deliberate indifference. He seeks compensatory damages, punitive damages, and an injunction "in the form of outside eye care by a specialist or ophthalmologist."

Plaintiff's grievances concerning his complaints were answered by prison authorities. On March 30, 2012, plaintiff was advised, "... you have seen sick call on several occasions after the altercation on 10-14-11. Documentation from those contacts indicates there were no swelling, redness, or distress noted to the eye area and no treatment needed. Nurse Millwee's response to you indicated that if there was an eye injury, you would be referred to an ophthalmologist by DWCC physician. Due to your complaints of vision blurring you were scheduled to see the DWCC optometrist. You have since been seen and have pending eye glass prescription to correct your vision." [Doc. 1-2, p. 3] The second step response concurred. [Doc. 1-2, p. 4] With regard to plaintiff's complaints about the October 14th incident, he was advised, "... decision related to placing an offender in a camera cell, or to single cell them, when on Standard Suicide Watch are made by Mental Health and not Security. You had been in a cell with your cell mate since 30/Aug/11 and did not report any difficulties. Documentation indicates that you had minor injuries as a result of your altercation, which were immediately treated and that when you were questioned you did not report any long-term difficulties involving your cell mate." [Doc. 1-2, p. 7] The second step response affirmed those findings and noted, "Per your Mental Health

3

Management Order completed on 10/14/11, it was appropriate for you to be in a double cell and to continue living in your current housing assignment at that time. Medical/Mental Health opinion is controlling. Also, per your medical record, it was noted the injury you accrued from the altercation with your cell mate was minimal." [Doc. 1-2, p. 8]

*Law and Analysis*

*1. Screening*

As a prisoner seeking redress from an officer or employee of a governmental entity, plaintiff's civil rights complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Section § 1915A(b) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

*2. Failure to Protect*

4

Plaintiff's right to protection from violence is governed by the Eighth Amendment's prohibition of cruel and unusual punishment and is measured by the standard of subjective deliberate indifference enunciated by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Under that standard, a prison official is not liable for failing to protect an inmate unless the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  In order to prevail, plaintiff must establish that the defendant officials: (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and, (2) actually drew the inference. *Farmer*, 511 U.S. at 837. Negligent inaction can never be the basis of a failure to protect claim. *Farmer*, 511 U.S. at 835.

The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of defendants. *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985).  In *Smith v. Wade*, 461 U.S. 30, 39 n. 8, 103 S.C. 1625, 1632 n. 8, 75 L.Ed.2d 632 (1983), the Court approved the following definition of wanton:  "'Wanton means reckless – without regard to the rights of others ... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.' 30 American and English Encyclopedia of Law 2-4 (2d ed. 905) (footnotes omitted)."

Nothing in plaintiff's complaint suggests that the defendants were guilty of deliberate indifference with regard to the October 14, 2011, altercation between plaintiff and his cell mate.

5

Nothing suggests that these defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. Indeed, according to the evidence submitted by plaintiff, he and his cell mate had been housed together for more than a month and neither had reported any difficulties. In any event, even assuming that the defendants were aware of such facts, nothing suggests that they actually drew such an inference.

Additionally, in considering whether defendants have failed to protect an inmate, Courts must look to whether there was a "substantial" or "pervasive" risk of harm preceding the assault. A "pervasive" risk of harm may not ordinarily be shown by pointing to a single or isolated incident. *See e.g. Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir.1992) (holding a "pervasive risk" is something more than a single incident and something less than a riot). Other than conclusory allegations, plaintiff offered nothing to suggest that the attack on him was at all foreseeable. Inmates are unlikely to recover under Section 1983 for injuries sustained in an isolated assaults unless they can prove that the authorities either "set him up" for the assault or deliberately ignored his repeated <u>and clearly well-founded claims of danger</u>. There are no allegations that the defendants set plaintiff up for the attack or ignored specific claims of danger prior to the attack. (Indeed, read liberally, it appears that plaintiff's concern was his suicidal ideation and not fear of attack from his cell mate.)

The facts alleged do not demonstrate that the defendants inferred that plaintiff was at risk of an event such as the one complained of. Further, it does not appear that the attack was a foreseeable consequence of any violations of prison policy.

As alleged by plaintiff, at worst, the defendants were negligent and it was this negligence that resulted in plaintiff's injury. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that

the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The deprivation must be intentional, as negligent conduct cannot serve as the basis for a §1983 claim. See *Jackson v. Procunier*, 789 F.2d 307, 310 (5th Cir.1986); *Farmer*, 511 U.S. at 835.

### 3. Medical Care

The gravamen of plaintiff's complaint is that his mental health problems were not adequately dealt with on October 14, 2011, and this in turn led to his being injured in an altercation with his cell mate. Following the altercation, plaintiff likewise contends that he received inadequate medical attention for the injuries sustained in that altercation.

As noted above, the constitutional right of a convicted prisoner to safe conditions of confinement and prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation a plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard

for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the defendants identified in his pleadings. As a matter of fact, it is manifestly obvious that plaintiff simply disagrees with the decisions of the health care professionals who were responsible for his care and treatment. Plaintiff's disagreement with their treatment choices falls far short of establishing deliberate indifference since mere disagreement with medical diagnosis or treatment does not state a claim under the Eighth Amendment. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997), citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir.1977); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir.1985).

Furthermore, as previously noted, deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifferent standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff must allege and prove that each of the defendants knew of and then disregarded an <u>excessive risk</u> of injury to him, and, that they were both aware of the facts from which the inference could be drawn that a <u>substantial risk of serious harm existed</u>, <u>and that they drew that</u> inference. *Id.* at 837.

In short, plaintiff's failure to allege and demonstrate deliberate indifference warrants dismissal of his complaint as frivolous and for failing to state a claim for which relief may be granted.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

In Chambers, Monroe, Louisiana, January 28, 2013.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE